Good morning, Your Honors. I'm John Ward. I'm here on behalf of Mr. Ortega. And I've laid out the best case I could in the briefs, and so I'd like to leave two minutes of rebuttal and invite any questions that the Court may have. Go ahead. You're not going to— I object to that. I really don't care for people doing that. I'd like to hear your argument. Thank you. Well, then, I think the real issue in this case is whether or not there was prejudice. And I think there was for the reason that the prosecutor challenged defense counsel to present what evidence. She said there was no evidence. There was simply a disagreement among counsel. And— But the real reason for that is that there wasn't. I mean, in other words, with regard to the — all the experts essentially agreed. I mean, the expert who testified and the two that were found at the time of Habeas, who had impressive credentials, all said they really couldn't tell you much of anything. Are you referring to the — to the — excuse me, the experts that Habeas counsel said? Yes. And the guy who testified for the prosecution, they basically agreed. Well, that's not — with all respect, Your Honor, that's not exactly true. The — Dr. Melinek and Mr. Fries were able to testify or were able — were willing to testify that the — that the scenario that the decedent was in an aggressive posture when he was shot was at least as likely and perhaps more likely than the other. And I think you have to remember and put this case in. And what did the other person say? The other person said you really couldn't say. Yeah. But you have somebody that's coming in. First of all, you have to put this case in the context that he was able — defense counsel was able to get instructions basically allowing for accidental — an accidental discharge of the firearm. And in that context, the — when the prosecutor says there's no evidence and all you have is an argument of counsel, if you could bring somebody in to say, no, no, no, that's not quite true, we have diagrams, we have this, we have that, to show that it's equally likely that this — that the decedent was grappling with the — with the firearm. And then you have a real contest. In other words, it added something in this case. Nobody said in this case, the Court of Appeal, nobody else said there's overwhelming evidence, blah, blah, blah. What they said was essentially what this looked like was a horse race. You know, there were two competing arguments. And how much would it take to tip the balance? That's basically my argument, Your Honor. That's why I was — you know. And you may disagree with me, but there it is. Okay. Okay, that's fine. We'll hear from the — from the State. If it pleases the Court, I'm Deputy Attorney General Max Feinstadt, here on behalf of Respondent. As Your Honor succinctly put it, the experts, both who testified at trial, the expert who they got the declaration from after trial, said the same thing, that the forensic evidence in this case was not helpful. It did not show, one way or another, what position the victim was in when he was shot. And the fact that they're trying to play with the language to say equally likely, maybe not as likely, that doesn't change the actual underlying evidence. And there can be no prejudice or no deficient performance for counsel's failure to present cumulative evidence. Well, there could be deficient performance in that it doesn't appear that she made any inquiry into any of this. For all we — she knew at that point there was somebody out there who would have been able to give useful testimony precluding the prosecution theory. But — and you had some argument about piercing her — what she said, which I did not find very persuasive. Go ahead. Well, Your Honor, I think that in this context, it's Petitioner's burden to show deficient performance. And Petitioner got a declaration from trial counsel that didn't really say anything. It didn't say — Well, it said that — I read it as saying, I didn't investigate it, but — and I don't have any reason — I can't tell you why. I don't remember why. Right. He said — trial counsel said, I do not remember a tactical reason for not contacting — Right. Which certainly has embedded in it the representation that she didn't do it. Right. By any ordinary reading of that sentence. But that sentence seems intentionally confusing. It does not say, I did not contact an expert. It does not say — Well, it assumed it because everybody knew it, I gather. But it did say that she didn't recall why. That's what it said. Didn't recall a reason for not doing something. Right. Yeah. But that doesn't necessarily say affirmatively, which is Petitioner's burden. Again, to show affirmatively, counsel did this, counsel didn't do this. And we have a similar — It was a very odd sentence if she had, in fact, done it. She said — or he. I don't remember if it was he. He. He, I guess. She says, I do not recall any specific tactical reason. Yes, Your Honor. And I agree it's an odd sentence. But, again, it's Petitioner's burden. But it doesn't matter. Right. I mean, it doesn't matter if we just deal with prejudice. Yes, Your Honor. It doesn't matter. And going back to prejudice, I think that's where you can end this case very easily because forensic evidence from both the prosecution expert, the defense expert, it's the same thing. Well, there might have been a subtle difference. I mean, I gather that the habeas evidence had some, you know, projection of ratio or something. I mean, how — it was more likely that it was X than Y. But — Go ahead. Right. And that evidence, Your Honor, we would argue is inadmissible because it seems that the forensic statement was very simple. Can't tell what was more likely. But then the defense expert went on and said, I read the testimony. I read the witness testimony. And based on that, I thought that the prosecutor's argument didn't necessarily track the witness testimony. I see. But that's not — You think she wasn't testifying — that statement was not based on the forensic evidence. Yes, Your Honor. And that's not something that she would have gotten to do at trial. She would have been able to give her opinion on the forensic testimony and then would have been presented with hypotheticals. Basically, if this was what the evidence was, what do you think? And she would have been able to say, well, the forensic evidence doesn't tell you what — one way or the other. It's possible, but it's not more likely. It's not less likely. Counsel, I have a more fundamental question. As I understand it, the experts only are about how those four shots were fired. It doesn't change the fact that four shots were fired. Like, isn't that enough? Isn't the — aren't — is this even an important question when you get into the whole facts of the context of him casing the victim out and walking up with a gun and then firing the shots? Yes, Your Honor. The crucial evidence in this case regarding intent, regarding the intent to kill and how this happened actually took place at the initiation of the conflict. Basically, the petitioner rolling by the victims, looking, staring at them, mad-dogging them was the term that was used, and then stopping, pulling their car up, approaching the victims, pulling a gun out before the initiation of the confrontation and turning to the accomplice and saying that this is the person we're looking for in much harsher terms. That's the evidence that indicated he was there to kill them. And regardless of exactly how the subsequent confrontation went down, he fired four shots, three of them that hit the victim, and one of them proved fatal. Anything else? No, Your Honor. If there are no more questions, we would submit. Okay. Thank you. I do have a couple of things to say. First of all, I don't think it's correct to look at this as what we think the value of the evidence that the experts were proposing to make, whether or not that would have swayed the jury. That's for the jury to decide. It's not a sufficiency of the evidence question. It's a question of, in a case where the prosecutor is saying there's nothing except an argument of counsel, nobody disagrees, the facts are all agreed upon, and so forth and so on, and they propose to come in with an expert with models and forensic mock-ups and so forth, we might think, gee, this doesn't really add anything, but that's really for the jury to say. I mean, and I think it would be sort of invading the province of the jury to sort of evaluate that, and on that basis alone. And we could say, if it was clearly not cumulative, clearly cumulative, that's one thing, but it really isn't. If you really look at it, if you look at what Freeze says, and if you look at what, or particularly what Melalech says, when she says, I'm going to take a second look at this after viewing Freeze's submission, she says, I conclude to a reasonable degree of probability that it's more likely that the decedent was in an aggressive posture. And I think that has to, to me, there's a fundamental difference between a battle of experts and somebody coming in with their own, or a battle of attorneys, and somebody coming in with their own expert and saying, look, we've got this diagram, we've got this, who knows what the jury would have done. And I think that's enough to give them another bite at the apple. Okay. Thank you. Thank you, counsel. The matter is submitted at this time.
judges: Paez, Berzon, Nelson